FILED

J.N

MAR 1 4 2008
MAR 14 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO.  08 CR 0052 (01) |
| | ) | |
| vs. | ) | Honorable John W. Darrah |
| | ) | Presiding Judge |
| JESUS M. RIVERA, | ) | |
| | ) | Hon. Martin C. Ashman |
| Defendant. | ) | Magistrate Judge |

### NOTICE OF FILING AND PROOF OF SERVICE

TO:  Renato T. Mariotti
     Assistant U.S. Attorney
     219 S. Dearborn Street
     Chicago, IL  60604

Please take notice that on 14th day of March, 2008, we shall file with the Clerk of the U.S. District Court, the attached Motion for Release Pending Trial (with Exhibits).

/s/   Neil H. Cohen
Attorney for Jesus M. Rivera

Neil H. Cohen
Attorney at Law
2000 N. Clifton Avenue
Chicago, IL  60614-4120
Telephone (773) 871-4814
Facsimile (773) 871-3304

### PROOF OF SERVICE

On the 14 day of March, 2008, we hand and electronically delivered to the above-named party this Notice and attached submission.

/s/   NEIL H. COHEN

1

FILED

JN

MAR 14 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,      )    NO.  08 CR 0052 (01)
                               )
          vs.                  )    Honorable John W. Darrah
                               )    Presiding Judge
JESUS RIVERA,                  )
                               )    Hon. Martin C. Ashman
          Defendant.           )    Magistrate Judge

### MOTION FOR RELEASE PENDING TRIAL

Jesus M. Rivera (hereafter Rivera), through undersigned
counsel, and pursuant to 18 U.S.C. § 3142, respectfully moves that
this Court enter an order granting Rivera release, pending trial.
In support, the following is asserted:

1.    **First Principles**: In Stack v. Boyle, 342 U.S. 1, 72 S.Ct.
1 (1951), Chief Justice Vinson considered, on certiorari, questions
surrounding the rejection of pretrial release.  Writing for the
full Court the Chief Justice explained:

> First.  From the passage of the Judiciary Act
> of 1789, 1 Stat. 73, 91, to the present
> Federal Rules of Criminal Procedure, Rule
> 46(a)(1), 18 U.S.C.A., federal law has
> unequivocally provided that a person arrested
> for a non-capital offense *shall* be admitted to
> bail.  This traditional right to freedom
> before conviction permits the unhampered
> preparation of a defense, and serves to
> prevent the infliction of punishment prior to
> conviction.  * * * Unless this right to bail
> before trial is preserved, the presumption of

1

> innocence, secured only after centuries of
> struggle, would lose its meaning.

342 U.S. at 4, 72 S.Ct. at 3 (parallel citation omitted).[1]

Justice Jackson's concurring opinion included:

> The practice of admission to bail, as it has
> evolved in Anglo-American law, is not a device
> for keeping persons in jail upon mere
> accusation until it is found convenient to
> give them a trial. *On the contrary, the
> spirit of the procedure is to enable them to
> stay out of jail until a trial has found them
> guilty. Without this conditional privilege,
> even those wrongly accused are punished by a
> period of imprisonment while awaiting trial nd
> are handicapped in consulting counsel,
> searching for evidence and witnesses, and
> preparing a defense.*

342 U.S. at 7-8, 72 S.Ct. at 5 (emph. added).[2]

In <u>United States v. Salerno</u>, 481 U.S. 739, 107 S.Ct. 2095 (1987), the Court considered the current Bail Reform Act (18 U.S.C. § 3141, *et seq.* - 1982). The respondent, Anthony *Salerno*, had been charged with, *inter alia*, conspiracy to commit murder within the fabric of a far-reaching RICO indictment. The district court

---

[1]    The Chief Justice referenced the Eighth Amendment: "Excessive bail shall not be required * * * ," 72 S.Ct. at 3, n. 1).

[2]    Accord: <u>United States v. Motlow</u>, 10 F.2d 657, 659 (7th Cir. 1926) (As to bail. The Eighth Amendment provides that "excessive bail shall not be required." This implies, and therefore safeguards, the right to give bail at least before trial.) (opinion by U.S. Supreme Court Justice Butler).

detained *Salerno* based on "danger," but the court of appeals reversed. On further review, Chief Justice Rehnquist considered the history of bail and the BRA, while holding that neither the Due Process Clause of the Fifth Amendment nor the Eighth Amendment prohibited pretrial detention where danger—danger to the community—provided the *sine qua non* for detention, 107 S.Ct. at 2100-03. In pertinent part, the Chief Justice explained that the Court was not attempting to "minimize the importance and fundamental nature of this [pretrial liberty] right," 107 S.Ct. at 2103. However, when the government proved by "clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community, we believe that, consistent with the Due Process Clause, a court may disable the arrestee from executing that threat," 107 S.Ct. at 2103. Reduced to substance, the Court held that where danger/danger to the community—has been demonstrated by clear and convincing evidence—pretrial detention may follow.

Most assuredly, pretrial detention is the antithesis of both the Due Process Clause of the Fifth Amendment and the bail guarantees of the Eighth Amendments. In *Salerno*, the Court sanctioned the limited circumstances permitting pretrial detention—where the government has demonstrated by clear and

3

convincing evidence "danger" and/or "danger" to the community.

As to Mr. Rivera, pretrial detention cannot be predicated on either "danger" or upon an ephemeral theory that he is a "risk of flight."

2. **Background - Jesus Rivera.** Mr. Rivera is 33 years old, of Puerto Rican ancestry and a citizen of the United States. Rivera is married to Melinda Rivera, who is gainfully employed.

They have two sons, Mark, age 20, and Michael, age 19, who are both living at home and in school. The Riveras reside in a home they own located in Rolling Meadow, Illinois.

Rivera has two sisters, Noemi and Jolanda, both of whom work and own property in the City of Chicago.

Rivera attended Schurz High School and received his G.E.D. in 2002 through a program offered at Wright Jr. College.

Until recently, Rivera had been gainfully employed his entire adult life, working at, in chronological order: McDonalds (for two year, from ages 15-17); Target (for two years, from ages 17-19); Tiger Flex (an industrial concern in Elk Grove Village, for eight years, from ages 19-27); and Hudson RCI (a water distributor in Palatine, for two and a half years, from ages 27 to 30).

In 2005, Mr. Rivera received extensive back injuries (to S4 and S5) in an automobile accident. He has been operated on and has

4

been treated for same throughout the last three or so years. As a result, he has been unable to work and suffers continuous, and sometimes extreme, pain.

3.    **The Indictment and Tendered Discovery.**    The *sine qua non* of indictment 08 CR 0052 relates to events allegedly occurring on January 17th and 18th of 2008. In sum, the indictment alleges that on said dates, Rivera endeavored to broker a drug deal between a government-operated selling Confidential Witness (CW) and prospective purchaser (and now co-defendant) Perry Black.

Tendered discovery discloses numerous unsuccessful antecedent conversations between the CW and Mr. Rivera regarding the CW's desire to find a willing purchaser of kilogram quantities of cocaine.

In the end, Mr. Rivera provided a willing buyer (Mr. Black) who offered and had money+ to buy two kilograms of powder cocaine, and the two were arrested. No cocaine changed hands.

4.    **Reasons advanced in support of release pending trial.**

a. Mr. Rivera is a United States citizen.

b. Mr. Rivera has minimal criminal history and none supportive of the notion that Rivera is a "flight risk."

c. Neither Mr. Rivera's past nor his alleged participation in the instant offense carry any overtones that he is otherwise a

5

danger to this community.

d.   <u>Posting Property as a Condition of Pretrial Release</u>

While The Bail Reform Act does not limit pretrial release to those who own their own residence Mr. Rivera, his wife and his sister are ready, willing and able to post the equity in their respective homes in order to secure Rivera's release pending trial.

Cumulatively the mortgage free equity in the offered parcels of real estate are valued at approximately **$112,000.00**.[3] And, of course, were Rivera released, pending trial, and had the poor judgment to abscond—all three sureties would lose their property, cf., <u>United States v. King</u>, 349 F.3d 964 (7th Cir. 2003).

---

[3]      Mr. and Mrs. Rivera own their condo located at 2308 Algonquin Road, #5, in Rolling Meadows, Il 60008. (See Exhibit 1, attached hereto, recorded Warranty Deed for said property). A recent appraisal (2/21/08) of said property, ascribes a value to it of $126,000.00. (See Exhibit 2, attached hereto and incorporated herein, Appraisal). A payoff letter for the property advises us that a little less than $82,000.00 is owed on the property. (See Exhibit 3, attached hereto and incorporated herein, Payoff Demand Statement). Thus, a secured total of approximately **$44,000.00** is available as to this property.

Mr. Rivera's sister, Jolanda O'Hare and her husband, own a single family residence located at 1838 N. Richmond in Chicago. (Title and/or Mortgage documents forthcoming). Said property has an appraised value of $370,000.00. (See Appraisal of 2/25/08, attached hereto and incorporated herein, as Exhibit 4). Approximately $302,000.00 is owed on the property. (See Payoff Letter of 2/27/08, attached hereto and incorporated herein as Exhibit 5). Thus, Thus, a secured total of approximately **$68,000.00** is available as to this property.

6

e.   Community Ties

As observed above, Mr. Rivera has considerable community ties - which means, *inter alia*, that he has no reason to flee and no place to go. Further, in securing his release with his home, the result of a decision to flee would be to boot his wife, his two sons and his sisters out of their homes --- a highly unlikely occurrence. [4]

f.   Medical Condition

As demonstrated by the most recent letter from his doctor, Mr. Rivera suffers a chronic condition related to L4-5 of his spine. Treatments offer temporary help and, per his doctor, surgery --- a drastic alternative for anyone with back pain --- is recommended. (See Letter from Steven Malkin, MD, dated 9/7/07, attached hereto and incorporated herein as Exhibit 6).

g. Conditions of Release

Rivera, through counsel, proposes release conditions that will

---

[4]   It would serve no useful purpose for Rivera, upon release, to depart the jurisdiction or otherwise avoid court-related proceedings.   As the court noted in United States v. Skoczen, 405 F.3d 537, 548-49 (7th Cir. 2005), the government is permitted to present evidence to the trial jury regarding the defendant's flight to avoid trial.   That being the case, it is *indecorous* to believe that Rivera would "risk" the admission of adverse evidence [flight] when such evidence may be considered by the jury as an attribute of guilt *vel non*, 405 F.3d at 549.

7

more than assure the court and the government that he will meet his obligations to appear. For example, Rivera will tender any already-issued passport, and will agree to forego any opportunity to secure another [passport]. Further, there is no difficulty in restricting travel to the Northern District of Illinois, and to report to Pretrial Services as directed. Additionally, Rivera will seek employment as his injury permits and, presumptively, any employment he is able to secure during the pendency of these proceedings, will be the subject of approval by Pretrial Services.

Further, Rivera and family will post and sign-over conditional title to their available realty, as previously discussed.

5. **Conclusion**. Rivera maintains that the above conditions, blended with the submission of equitable real estate properties are more than adequate to undermine any illusory "risk of flight." 18 U.S.C. § 3142(j) reminds the motivated reader that—"Nothing in this section shall be construed as modifying or limiting the presumption of innocence."

Blending the above, with the balance of the content of this submission, it is pristine that Jesus M. Rivera is hardly a flight risk. It is also clear that there are no factors in favor of detention that are otherwise supported by clear and convincing evidence. 18 U.S.C. § 3142(g)

8

Thus, Mr. Rivera respectively moves that this Court to enter an order granting him pretrial release, with such conditions as this Court deems appropriate.

Respectfully submitted,

/s/ Neil H. Cohen
Attorney for Jesus M. Rivera

Neil H. Cohen
Attorney at Law
2000 N. Clifton Avenue
Chicago, IL 60614
Telephone: 773/871-4814
Facsimile: 773/871-3304

9

# EXHIBIT 1

4761/0023 39 005 Page 1 of    3
2001-10-22 08:45:51
Cook County Recorder        25.50

0010980710



**Chicago Title Insurance Company**

**WARRANTY DEED**
**ILLINOIS STATUTORY**

## COOK COUNTY
## RECORDER
## EUGENE "GENE" MOORE
## ROLLING MEADOWS

THE GRANTOR(S), **ALVIN S. FOERSTER, AN UNMARRIED PERSON,**
of the City of ROLLING MEADOWS, County of COOK, State of Illinois for and in consideration of TEN & 00/100
DOLLARS, and other good and valuable consideration in hand paid, CONVEY(S) and Warrant(s) to
**JESUS M. RIVERA and MELINDA RIVERA**
**4982 B ALGONQUIN PARKWAY, ROLLING MEADOWS, Illinois 60008**
**HUSBAND AND WIFE, not as Joint Tenants or Tenants in Common, but as TENANTS BY THE ENTIRETY,**
of the County of COOK, all interest in the following described Real Estate situated in the County of COOK in the State of
Illinois, to wit:

### See Exhibit 'A' attached hereto and made a part hereof

*SUBJECT TO:* covenants, conditions and restrictions of record, private, public and utility easements and roads and
highways, party wall rights and agreements, general taxes for the year 2000 and subsequent years including taxes which
may accrue by reason of new or additional improvements during the year(s)

hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinois.
TO HAVE AND TO HOLD said premises not as Joint Tenants or Tenants in Common, but as TENANTS BY THE
ENTIRETY, forever.

Permanent Real Estate Index Number(s): 08-08-106-024-1053
Address(es) of Real Estate: 2308 W. ALGONQUIN ROAD, UNIT 5, ROLLING MEADOWS, Illinois 60008

Dated this 28th day of September, 2001.

ALVIN S. FOERSTER

> CITY OF ROLLING MEADOWS, IL
> REAL ESTATE TRANSFER STAMP
> DATE 10-1-01 $ 255.00
> ADDRESS 2308 W Algonquin #5
> 1655    Initial JBK

STATE OF ILLINOIS, COUNTY OF ___COOK___ ss.
 I, the undersigned, a Notary Public in and for said County, in the State aforesaid, CERTIFY THAT ALVIN S.
FOERSTER, AN UNMARRIED PERSON,
personally known to me to be the same person(s) whose name(s) are subscribed to the foregoing instrument, appeared
before me this day in person, and acknowledged that they signed, sealed and delivered the said instrument as their free and
voluntary act, for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Given under my hand and official seal, this ___28th___ day of September, 2001.



OFFICIAL SEAL
JOSETTE M COOK
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/12/03

_(Notary Public)_

**Prepared By:**  Steven M. Shaykin
951A North Plum Grove Road
Schaumburg, Illinois  60173

**Mail To:**
JOAN VASQUEZ
Attorney
20063 NORTH RAND ROAD
PALATINE, Illinois 60074



**Name & Address of Taxpayer:**
JESUS M. RIVERA and MELINDA RIVERA
2308 W. ALGONQUIN ROAD, UNIT 5
ROLLING MEADOWS, Illinois  60008



STATE OF ILLINOIS
OCT.22.01
COOK COUNTY
STATE TAX

REAL ESTATE
TRANSFER TAX
# 0000006172
0008500
FP351023

)STAGE METER SYSTEMS



COOK COUNTY
REAL ESTATE TRANSACTION TAX
OCT.22.01
REVENUE STAMP
COUNTY TAX

REAL ESTATE
TRANSFER TAX
# 0000006209
0004250
FP351014

**EXHIBIT 'A'**

0010980710 Page 3 of 3

**Legal Description**

UNIT NUMBER 2308-5 IN COACH LIGHT CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE: PART OF LOT "A" AND PART OF LOT 2 IN ALGONQUIN PARK, UNIT NUMBER 2, BEING A SUBDIVISION IN THE WEST 1/2 OF THE WEST 1/2 OF THE EAST 1/2 OF SECTION 8, TOWNSHIP 41 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS; WHICH SURVEY IS ATTACHED AS EXHIBIT "A" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT NUMBER 25385416, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.

# EXHIBIT 2

File No. Rivera Rolling Meadow

**APPRAISAL OF**



**LOCATED AT:**

2308 W. ALGONQUIN RD.
ROLLING MEADOWS, IL  60008-3677

**FOR:**

RIVERA
2308 ALGONQUIN RD.
ROLLING MEADOWS, IL 60008

**BORROWER:**

RIVERA

**AS OF:**

February 23, 2008

**BY:**

CAVAN P. CUNNINGHAM

File No. Rivera Rolling Meado

02/25/2008

RIVERA
2308 ALGONQUIN RD.
ROLLING MEADOWS, IL 60008

File Number:  Rivera Rolling Meadows

DEAR MS. RIVERA:

In accordance with your request, I have personally inspected and appraised the real property at:

2308 W. ALGONQUIN RD.
ROLLING MEADOWS, IL 60008-3677

The purpose of this appraisal is to estimate the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the estimated market value of the property as of  February 23, 2008        is:

$126,000
One Hundred Twenty-Six Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final estimate of value, descriptive photographs, limiting conditions and appropriate certifications.

SINCERELY

CAVAN P. CUNNINGHAM

# Individual Condominium Unit Appraisal Report

File No. Rivera Rolling Meado

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | |
|---|---|---|
| Property Address 2308 W. ALGONQUIN RD. | Unit # 5 | City ROLLING MEADOWS    State IL    Zip Code 60008-3677 |

Borrower RIVERA    Owner of Public Record RIVERA    County COOK

Legal Description SEE LENDERS TITLE POLICY FOR COMPLETE LEGAL DESCRIPTION.

Assessor's Parcel # 08-09-106-024-1053    Tax Year 06    R.E. Taxes $ 1,727.00

Project Name COACH LIGHT    Phase # 1    Map Reference MSA/MD 16974-031    Census Tract 8051.05

Occupant [X] Owner  [ ] Tenant  [ ] Vacant    Special Assessments $ NA    HOA $ 252.00  [ ] per year [X] per month

Property Rights Appraised  [X] Fee Simple  [ ] Leasehold  [ ] Other (describe)

Assignment Type  [ ] Purchase Transaction  [ ] Refinance Transaction  [X] Other (describe) ESTIMATE OF VALUE

Lender/Client RIVERA    Address 2308 ALGONQUIN RD., ROLLING MEADOWS, IL 60008

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). NA

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
NA

Contract Price $ NA    Date of Contract NA    Is the property seller the owner of public record? [X] Yes  [ ] No    Data Source(s) TAX RECORDS

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [X] No

If Yes, report the total dollar amount and describe the items to be paid.  $ NA

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | | Condominium Unit Housing Trends | | | | Condominium Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | [X] Urban | [X] Suburban | [ ] Rural | Property Values | [X] Increasing | [ ] Stable | [ ] Declining | PRICE $(000) | AGE (yrs) | One-Unit | 75 % | |
| Built-Up | [X] Over 75% | [ ] 25-75% | [ ] Under 25% | Demand/Supply | [ ] Shortage | [X] In Balance | [ ] Over Supply | 90 Low | NEW | 2-4 Unit | 10 % | |
| Growth | [ ] Rapid | [X] Stable | [ ] Slow | Marketing Time | [ ] Under 3 mths | [X] 3-6 mths | [ ] Over 6 mths | 350 High | 75 | Multi-Family | 5 % | |
| | | | | | | | | 150 Pred. | 30 | Commercial | 10 % | |
| | | | | | | | | | | Other | % | |

Neighborhood Boundaries  See Attached Addendum

Neighborhood Description  See Attached Addendum

Market Conditions (including support for the above conclusions)  See Attached Addendum

Topography BASICALLY LEVEL    Size COMMON    Density LOW    View RESIDENTIAL

Specific Zoning Classification R-2    Zoning Description RESIDENTIAL

Zoning Compliance [X] Legal  [ ] Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? [X] Yes  [ ] No

[ ] No Zoning  [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?  [X] Yes  [ ] No    If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street ASPHALT | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley NONE | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone X    FEMA Map # 170155 0192F    FEMA Map Date 11/06/2000

Are the utilities and off-site improvements typical for the market area?  [X] Yes  [ ] No    If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No    If Yes, describe.

Data source(s) for project information OWNER, MANAGEMENT COMPANY

Project Description  [ ] Detached  [ ] Row or Townhouse  [ ] Garden  [ ] Mid-Rise  [ ] High-Rise  [X] Other (describe) LOW RISE

| General Description | | General Description | | Subject Phase | | Project Completed | | If Project Incomplete | |
|---|---|---|---|---|---|---|---|---|---|
| # of Stories 3 | | Exterior Walls ALUM/BRICK | | # of Units | 300 | # of Phases | 1 | # of Planned Phases | NA |
| # of Elevators 0 | | Roof Surface ASPH SHING | | # of Units Completed | 300 | # of Units | 300 | # of Planned Units | NA |
| [X] Existing  [ ] Proposed | | Total # Parking 600 | | # of Units For Sale | 10 | # of Units for Sale | 10 | # of Units for Sale | NA |
| [ ] Under Construction | | Ratio (spaces/units) 2:1 | | # of Units Sold | 300 | # of Units Sold | 300 | # of Units Sold | NA |
| Year Built 1976 | | Type ASSIGNED | | # of Units Rented | 52 | # of Units Rented | 52 | # of Units Rented | NA |
| Effective Age 15 YRS. | | Guest Parking ASSIGNED | | # of Owner Occupied Units | 248 | # of Owner Occupied Units | 248 | # of Owner Occupied Units | NA |

Project Primary Occupancy  [X] Principal Residence  [ ] Second Home or Recreational  [ ] Tenant

Is the developer/builder in control of the Homeowners' Association (HOA)?  [ ] Yes [X] No

Management Group –  [ ] Homeowners' Association  [ ] Developer  [X] Management Agent – Provide name of management company.    MCGILL 847-255-0603

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? [ ] Yes [X] No    If Yes, describe

Was the project created by the conversion of an existing building(s) into a condominium? [ ] Yes [X] No    If Yes, describe the original use and the date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? [X] Yes  [ ] No    If No, describe

Is there any commercial space in the project? [ ] Yes [X] No    If Yes, describe and indicate the overall percentage of the commercial space.

## Individual Condominium Unit Appraisal Report

File No. Rivera Rolling Meado

Describe the condition of the project and quality of construction. **AT THE TIME OF INSPECTION THE CONDITION AND QUALITY OF CONSTRUCTION FOR THE AREA IS AVERAGE.**

Describe the common elements and recreational facilities. **COMMON INSURANCE, EXTERIOR MAINTENANCE, SCAVENGER, SNOW REMOVAL, HEAT, WATER, GAS.**

Are any common elements leased to or by the Homeowners' Association? ☐ Yes ☒ No   If Yes, describe the rental terms and options. _____

Is the project subject to a ground rent? ☐ Yes ☒ No   If Yes, $ _____   per year (describe terms and conditions) _____

Are the parking facilities adequate for the project size and type? ☒ Yes ☐ No   If No, describe and comment on the effect on value and marketability. _____

I ☐ did ☒ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed. **A COPY OF THE BUDGET WAS NOT AVAILABLE TO THE APPRAISER.**

Are there any other fees (other than regular HOA charges) for the use of the project facilities? ☐ Yes ☒ No   If Yes, report the monthly facility charges and describe. _____

Compared to other competitive projects of similar quality and design, the subject unit charge appears ☐ High ☒ Average ☐ Low   If High or Low, describe. _____

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?
☐ Yes ☒ No   If Yes, describe and explain the effect on value and marketability. _____

Unit Charge $ 252.00   per month X 12 = $ 3,024.00   per year   Annual assessment charge per year per square feet of gross living area = $ 3.36
Utilities included in the unit monthly assessment. ☐ None ☒ Heat ☐ Air Conditioning ☐ Electricity ☒ Gas ☒ Water ☐ Sewer ☐ Cable ☐ Other (describe)

| GENERAL DESCRIPTION | INTERIOR    materials/condition | AMENITIES | | Appliances | | CAR STORAGE | | |
|---|---|---|---|---|---|---|---|---|
| Floor # 2&3 | Floors HW/TILE/CRPT/GD | ☐ Fireplace(s) # | | ☒ Refrigerator | | ☐ None | | |
| # of Levels 3 | Walls DRYWALL/GD | ☐ Woodstove(s) # | | ☒ Range/Oven | | ☐ Garage ☐ Covered ☐ Open | | |
| Heating Type BASE   Fuel GAS | Trim/Finish WD STND/GD | ☐ Deck/Patio | | ☐ Disp ☒ Microwave | | # of Cars | | |
| ☐ Central AC ☒ Individual AC | Bath Wainscot TILE/GD | ☒ Porch/Balcony | | ☐ Dishwasher | | ☒ Assigned ☐ Owned | | |
| ☐ Other (describe) | Doors WOOD/GD | ☐ Other | | ☐ Washer/Dryer | | Parking Space # 2 | | |
| Finished area above grade contains: | 5 Rooms | 2 Bedrooms | 1 Bath(s) | 900 Square Feet of Gross Living Area Above Grade | | | | |

Are the heating and cooling for the individual units separately metered? ☒ Yes ☐ No   If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.). **TYPICAL ENERGY EFFICIENT ITEMS FOR A HOME OF THIS AGE AND AGE.**

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). **THE PROPERTY IS IN GOOD CONDITION AT THE TIME OF THIS REPORT. PHYSICAL DEPRECIATION FOR NORMAL WEAR AND TEAR OF ITEMS WHICH CANNOT BE REPAIRED OR REPLACED .NO FUNCTIONAL OR EXTERNAL OBSOLESCENCE NOTED.**

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No   If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No   If No, describe.

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain _____

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) **TAX RECORDS**
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) **TAX RECORDS**
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NA | NA | NA | NA |
| Price of Prior Sale/Transfer | NA | NA | NA | NA |
| Data Source(s) | TAX RECORDS | TAX RECORDS | TAX RECORDS | TAX RECORDS |
| Effective Date of Data Source(s) | 02/21/2008 | 02/21/2008 | 02/21/2008 | 02/21/2008 |

Analysis of prior sale or transfer history of the subject property and comparable sales   **THE SUBJECT PROPERTY HAS NOT BEEN SOLD IN THE PAST 3YRS. ALL COMPS HAVE NOT BEEN SOLD IN THE PAST 12 MONTHS OTHER THEN NOTED IN THIS REPORT.**

## Individual Condominium Unit Appraisal Report

File No. Rivera Rolling Meado

| | | | |
|---|---|---|---|
| There are **8** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 100,000 to $ 134,000 |
| There are **4** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 95,000 to $ 126,000 |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 2308 W. ALGONQUIN RD. **5** | 2508 W. ALGONQUIN RD. 4 | | 2404 W. ALGONQUIN RD. 9 | | 2402 W. ALGONQUIN RD. 8 | |
| Project Name and Phase | COACH LIGHT 1 | COACH LIGHT 1 | | COACH LIGHT 1 | | COACH LIGHT 1 | |
| Proximity to Subject | | 0 Miles | | 0 Miles | | 0 Miles | |
| Sale Price | $ NA | | $ 126,000 | | $ 124,900 | | $ 120,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 140.00 sq. ft. | | $ 138.78 sq. ft. | | $ 133.33 sq. ft. | |
| Data Source(s) | | MLS#0686550 | | MLS#06519033 | | MLS#06311736 | |
| Verification Source(s) | | TAX RECORDS | | TAX RECORDS | | TAX RECORDS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing Concessions | NA | CONVENTIONAL NONE KNOWN | | CONVENTIONAL NONE KNOWN | | CONVENTIONAL NONE KNOWN | |
| Date of Sale/Time | NA | 11/28/07 | | 07/27/07 | | 03/20/07 | |
| Location | SUBURBAN | SUBURBAN | | SUBURBAN | | SUBURBAN | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| HOA Mo. Assessment | $252.00 | $240.00 | | $214.00 | | $228.00 | |
| Common Elements and Rec. Facilities | COMMON INS. EXT MAIN. | COMMON INS. EXT MAIN. | | COMMON INS. EXT MAIN. | | COMMON INS. EXT MAIN. | |
| Floor Location | 2&3 | 1 | | 2&3 | | 2&3 | |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | CONDO | CONDO | | CONDO | | CONDO | |
| Quality of Construction | ALUM/BRICK | ALUM/BRICK | | ALUM/BRICK | | ALUM/BRICK | |
| Actual Age | 31+/- Years | 31 YRS. | | 31 YRS. | | 31 YRS. | |
| Condition | GOOD | GOOD | | GOOD | | AVERAGE | 5,000 |
| Above Grade Room Count | Total 6 Bdrms 2 Baths 1 | Total 5 Bdrms 2 Baths 1 | | Total 5 Bdrms 2 Baths 1 | | Total 5 Bdrms 2 Baths 1 | |
| Gross Living Area | 900 sq. ft. | 900 sq. ft. | | 900 sq. ft. | | 900 sq. ft. | |
| Basement & Finished Rooms Below Grade | FULL STORAGE | FULL STORAGE | | FULL STORAGE | | FULL STORAGE | |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/Cooling | BASE/2 WALL | BASE/2 WALL | | BASE/2 WALL | | BASE/2 WALL | |
| Energy Efficient Items | BASIC | BASIC | | BASIC | | BASIC | |
| Garage/Carport | NONE | NONE | | NONE | | NONE | |
| Porch/Patio/Deck | BALCONY | NONE | 1,000 | BALCONY | | BALCONY | |
| | | | | | | | |
| Net Adjustment (Total) | | [X] + [ ] - | $ 1,000 | [X] + [ ] - | $ 0 | [X] + [ ] - | $ 5,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 0.8% Gross Adj. 0.8% | $ 127,000 | Net Adj. 0.0% Gross Adj. 0.0% | $ 124,900 | Net Adj. 4.2% Gross Adj. 4.2% | $ 125,000 |

Summary of Sales Comparison Approach  ALL SALES ARE CLOSED IN THE PAST 12 MONTHS AND ARE SIMILAR TO THE SUBJECT WITH RESPECT TO DESIGN, AGE, AND QUALITY OF CONSTRUCTION. AN ADJUSTMENT FOR CONDITION WAS GIVEN TO COMP 3, BECAUSE OF IT'S INFERIOR UPDATING.

Indicated Value by Sales Comparison Approach $ 126,000

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____ Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM) _____

Indicated Value by: Sales Comparison Approach $ 126,000  Income Approach (if developed) $ _____
THE COMPARISON APPROACH BEST REFLECTS THE ATTITUDES OF BUYERS AND SELLERS IN THE RESIDENTIAL REAL ESTATE MARKET. THE PRESENCE OF DEPRECIATION REDUCES THE COST APPROACH EFFECTIVENESS, AND THE LACK OF RENTAL DATA VIRTUALLY ELIMINATES THE RELEVANCY OF THE INCOME APPROACH.

This appraisal is made  [X] "as is,"  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,  [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or  [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  THE REPORT IS BASED ON FEE SIMPLE OWNERSHIP AND SUBJECT TO CERTIFICATION AND LIMITING CONDITIONS,  COMMENTS ATTACHED.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 126,000 as of  02/23/2008 , which is the date of inspection and the effective date of this appraisal.

CP Appraisal

## Individual Condominium Unit Appraisal Report    File No. Rivera Rolling Meado

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject unit, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.   The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.   The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Individual Condominium Unit Appraisal Report    File No. Rivera Rolling Meado

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

**Individual Condominium Unit Appraisal Report**    File No. Rivera Rolling Meado

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _CPC_ | Signature _____ |
| Name CAVAN P. CUNNINGHAM | Name _____ |
| Company Name _____ | Company Name _____ |
| Company Address _____ | Company Address _____ |
| Telephone Number _____ | Telephone Number _____ |
| Email Address _____ | Email Address _____ |
| Date of Signature and Report 02/25/2008 | Date of Signature _____ |
| Effective Date of Appraisal 02/23/2008 | State Certification # _____ |
| State Certification # 556004518 | or State License # _____ |
| or State License # _____ | State IL _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State IL _____ | |
| Expiration Date of Certification or License 9/30/2009 | |

ADDRESS OF PROPERTY APPRAISED
2308 W. ALGONQUIN RD.
ROLLING MEADOWS, IL 60008-3677

APPRAISED VALUE OF SUBJECT PROPERTY $ 126,000

LENDER/CLIENT
Name RIVERA
Company Name RIVERA
Company Address 2308 ALGONQUIN RD.
ROLLING MEADOWS, IL 60008
Email Address _____

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection _____
☐ Did inspect interior and exterior of subject property
    Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection _____

| Borrower: RIVERA | | File No.: Rivera Rolling Meadows |
|---|---|---|
| Property Address: 2308 W. ALGONQUIN RD. | | Case No.: |
| City: ROLLING MEADOWS | State: IL | Zip: 60008-3677 |
| Lender: RIVERA | | |

**Neighborhood Boundaries**
THE SUBJECT IS BOUND BY CENTRAL RD. TO THE NORTH, GOLF RD. TO THE SOUTH, NEW WILKE RD. TO THE WEST, AND FRONTAGE RD. TO THE EAST.

**Neighborhood Description**
THE SUBJECT NEIGHBORHOOD IS CONVENIENTLY LOCATED IN ROLLING MEADOWS ILLINOIS A SUBURB LOCATED APPROXIMATELY 25 MILES NORTH WEST OF DOWNTOWN CHICAGO. THE NEIGHBORHOOD CONSIST MAINLY OF SINGLE FAMILY DETACHED HOUSING. THE NEIGHBORHOOD IS LOCATED IN GOOD RELATIONSHIP TO ALL COMMUNITY SERVICES AND AMENITIES INCLUDING SCHOOLS, HOSPITALS, RECREATIONAL FACULTIES, SHOPPING AND PUBLIC TRANSPORTATION.

**Neighborhood Market Conditions**
MARKET CONDITIONS WITHIN THE SUBJECT MIRROR GENERAL CONDITIONS IN THE MIDWEST. MONEY IS READILY AVAILABLE AT ATTRACTIVE RATES. ALL TYPES OF FINANCING VEHICLES ARE AVAILABLE WITH CONVENTIONAL FIXED RATE MORTGAGE MOST PREVALENT. MARKETING TIME IS CONSIDERED TO BE UNDER 3 MONTHS.

| Borrower: RIVERA | | File No.: Rivera Rolling Meadows |
| --- | --- | --- |
| Property Address: 2308 W. ALGONQUIN RD. | | Case No.: |
| City: ROLLING MEADOWS | State: IL | Zip: 60008-3677 |
| Lender: RIVERA | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: February 23, 2008
Appraised Value: $ 126,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: RIVERA | File No.: Rivera Rolling Meadows |
| Property Address: 2308 W. ALGONQUIN RD. | Case No.: |
| City: ROLLING MEADOWS | State: IL | Zip: 60008-3677 |
| Lender: RIVERA | | |



**COMPARABLE SALE #1**

2508 W. ALGONQUIN RD., #4

Sale Date: 11/28/07
Sale Price: $ 126,000



**COMPARABLE SALE #2**

2404 W. ALGONQUIN RD., #9

Sale Date: 07/27/07
Sale Price: $ 124,900



**COMPARABLE SALE #3**

2402 W. ALGONQUIN RD., #8

Sale Date: 03/20/07
Sale Price: $ 120,000

**LOCATION MAP**

| | |
|---|---|
| Borrower: RIVERA | File No.:  Rivera Rolling Meadows |
| Property Address: 2308 W. ALGONQUIN RD. | Case No.: |
| City: ROLLING MEADOWS | State: IL     Zip: 60008-3677 |
| Lender: RIVERA | |



Borrower: RIVERA
Property Address: 2308 W. ALGONQUIN RD.
City: ROLLING MEADOWS
Lender: RIVERA

File No.:  Rivera Rolling Meadows
Case No.:
State: IL          Zip: 60008-3677



**FloodMap Legend**

Flood Zones

- Areas inundated by 500-year flooding
- Areas outside of the 100- and 500-year floodplains
- Areas inundated by 100-year flooding
- Areas inundated by 100-year flooding with velocity hazard
- Floodway areas
- Floodway areas with velocity hazard
- Areas of undetermined but possible flood hazards
- Areas not mapped on any published FIRM

**Flood Information**

Community: 170149 - ROLLING MEADOWS, CITY OF
Property is not in a FEMA special flood hazard area.
Map Number: 170165 0102E
Panel: 0102E
Zone: x

Map Date: 11/06/2000
FIPS:17031

Neither Transamerica Flood Hazard Certification (TFHC) nor ACI make any representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose. Neither TFHC nor ACI or the seller of this flood report shall have any liability to any third party for any loss or expense of this flood report.

| Borrower: RIVERA | | File No.: Rivera Rolling Meadows |
|---|---|---|
| Property Address: 2308 W. ALGONQUIN RD. | | Case No.: |
| City: ROLLING MEADOWS | State: IL | Zip: 60008-3677 |
| Lender: RIVERA | | |



Department of Financial and Professional Regulation
Division of Professional Regulation

License No.
556.004518

EXPIRES
09/30/2009

Certified Residential Real Estate Appraiser

CAVAN P CUNNINGHAM
19W240 GOVERNORS TRAIL
OAK BROOK, IL 60523

Issue Date: 11/26/2007

File No. Rivera Rolling Meado

######### INVOICE #########

File Number: Rivera Rolling Meadows                    02/23/2008

RIVERA
2308 ALGONQUIN RD.
ROLLING MEADOWS, IL 60008

Borrower :          RIVERA

Invoice # :          NA
Order Date :
Reference/Case # :
PO Number :

2308 W. ALGONQUIN RD.
ROLLING MEADOWS, IL  60008-3677

|  | | |
|---|---|---|
| APPRAISAL | $ | NA |
| | $ | |
| Invoice Total | $ | 0.00 |
| State Sales Tax @ | $ | 0.00 |
| Deposit | ($ | ) |
| Deposit | ($ | ) |
| Amount Due | $ | 0.00 |

Terms:   PAID AT THE DOOR

Please Make Check Payable To:

19W240 GOVERNORS TRL.
OAK BROOK, IL 60523

Fed. I.D. #:

# EXHIBIT 3

**Countrywide**
HOME LOANS

**PAYOFF DEMAND STATEMENT**

*Payoff Department, Mail Stop FWTX346*
*5401 N. Beach St.*
*Ft. Worth, TX 76137-2733*

| **Statement Void After March 14, 2008** |

Statement Date
February 16, 2008

**Countrywide Home Loans**
**Loan No.:**   36733526-2
**FHA Case#:**
IL1372278466734

C G S 5 0 5 0 0 0 4 8 1 3 9
Jesus M & Melinda Rivera
2308 Algonquin Rd Apt 5
Rolling Meadows, IL 60008

**Name & Property Address:**
Jesus M & Melinda Rivera
2308 Algonquin Rd Unit 5
Rolling Meadows, IL 60008

(FHA)

| **PAYOFF CALCULATION** | | |
|---|---|---|
| | Principal Balance as of 01/01/2008 | $80,858.17 |
| | Interest from 01/01/2008 to 03/14/2008 | 981.37 |
| | County Recording Fee | 36.50 |
| | Mortgage Insurance Premium | 67.06 |
| **Total Amount Required to Release Lien** (As of March 14, 2008) | | **$81,943.10** |

*AMENDED DEMAND STATEMENTS ARE SENT AUTOMATICALLY IF THE TOTAL AMOUNT DUE INCREASES BEFORE MARCH 14, 2008.*

**INTEREST CALCULATIONS**

For all full month payment periods, interest is calculated on a monthly basis. Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month. For partial months, interest is calculated daily on the basis of a 365 day year.

**PAYOFF INSTRUCTIONS**

Payoff funds must be made payable to **Countrywide Home Loans Servicing LP** and will be accepted by **WIRE** or **CERTIFIED FUNDS ONLY**. They **MUST** reference the **Countrywide loan number, property address and borrower's name** in the OBI (Originator Beneficiary Information) field of the wire transfer or on the face of the check and must be sent per the instructions below. Failure to do so may cause delays resulting in additional interest due or the return of the funds to the remitter. Funds received after 3:00 p.m. Central Time may be posted the following business day.

**Wire Funds to:**
Beneficiary Bank: Bank of America
ABA Routing #: 0260-0959-3
Beneficiary Acct Name: MRC
MRC Account #12356-19173
Reference: Jesus M & Melinda Rivera
Loan Number: 36733526-2

**Mail CERTIFIED Funds to:**
Countrywide Home Loans Servicing LP
Attention: Payoff Department, Mail Stop FWTX346
5401 N. Beach St.
Ft. Worth, TX 76137-2733

**BANK OF AMERICA WILL <u>NOT</u> PROCESS OR ACCEPT PAYMENTS OTHER THAN WIRE FUNDS WITH RESPECT TO THIS ACCOUNT.**

Departamento de Servicio al Cliente al 1-800-669-6607.
**Nota:** Si necesita la información incluida en la Demanda de Liquidación traducida al español, por favor comuníquese con nuestro

Fax: 1-888-836-8714

Automated Payoff Request Line: 1-800-669-6833

CGS5050048

| Countrywide Home Loans<br>Loan No: 36733526-2 | Statement Date:<br>February 16, 2008 | Statement Void After:<br>March 14, 2008 |

---

### NOTICE TO TITLE COMPANY

Countrywide, as mortgagee of record, has an obligation under Illinois law to record a release of lien upon satisfaction of the mortgage loan. Accordingly, we have procedures in place to prepare and record such release promptly after we receive the payoff funds and have included recording fees for release in our payoff demand statement. In order to avoid duplicate effort and charges, PLEASE DO NOT RECORD A CERTIFICATE OF RELEASE FOR THIS LOAN OR COLLECT RECORDING FEES THEREFOR.

The following escrow items may be disbursed prior to our receipt of payoff funds:

| ESCROW<br>ACCOUNT<br>INFORMATION | Escrow Item | Last Pmt Date | Last Pmt Amt | Next Due Date |
|---|---|---|---|---|
| | County Tax | 11/16/2007 | 849.73 | 08/01/2008 |
| | County Tax | 02/13/2007 | 876.98 | 02/01/2008 |
| | FHA Insurance | | | 03/01/2008 |

*YOUR CURRENT ESCROW BALANCE IS $1,029.91 AND MAY NOT BE USED AS A CREDIT TOWARD PAYOFF. COUNTRYWIDE AUTOMATICALLY PROCESSES ESCROW REFUNDS 14 DAYS AFTER PAYOFF IN ORDER TO ENSURE ALL OUTSTANDING FUNDS HAVE CLEARED.*

| ESTIMATED<br>PAYOFF<br>SCHEDULE | As of | Amount | | As of | Amount |
|---|---|---|---|---|---|
| | 03/04/2008 | 81,810.18 | | 03/17/2008 | 81,982.97 |
| | 03/05/2008 | 81,823.47 | Total Payoff as of<br>March 14, 2008 | 03/18/2008 | 81,996.26 |
| | 03/06/2008 | 81,836.76 | | 03/19/2008 | 82,009.55 |
| | 03/07/2008 | 81,850.05 | $81,943.10 | 03/20/2008 | 82,022.85 |
| | 03/10/2008 | 81,889.93 | | 03/21/2008 | 82,036.14 |
| | 03/11/2008 | 81,903.22 | | 03/24/2008 | 82,076.01 |
| | 03/12/2008 | 81,916.51 | | | |
| | 03/13/2008 | 81,929.80 | | | |

---

### PAYOFF OVERAGES

If Countrywide receives funds greater than the amount required to pay off your loan, we will automatically process the overage within 14 days after payoff and return the excess amount to you. **If an address change is being submitted on behalf of the borrower, the form MUST be signed by the borrower for the address change to take effect.**

---

### BANKRUPTCY DISCHARGE

If you have received a discharge of this debt in a bankruptcy, you have no personal obligation to repay this debt. However, the lender may still foreclose on your property if the debt is not paid as required by the loan documents. This payoff statement is provided at your request and for your convenience. This is not an attempt to collect a debt that has been discharged, nor a demand for payment.

---

### ADDITIONAL INFORMATION

**The payoff amount indicated in this statement is subject to change for various reasons, including but not limited to the following:**

- We may not have posted a recently submitted payment; (Please **DO NOT** place a stop payment on any check.)
- A fee may be assessed if a payment is returned unpaid by your financial institution for any reason;
- Additional or anticipated fees and costs may be incurred relating to collection, foreclosure, bankruptcy, or other defaults on your loan;
- Adjustments may be required to reflect disbursements made by, or payments owed to, your prior lender if the servicing of your loan was transferred to Countrywide Home Loans Servicing LP;
- Late charges may be assessed for delinquent payments received after: 03/16/2008;
- Funds may be deducted from your escrow account to pay taxes, insurance or other escrow items that become due.

CG850500048

# EXHIBIT 4

708/0149537664/XP521/1/4/0000030153650



February 27, 2008


Jolandra O'Hare
773 572 5862


                              (773)572-5862
                              708 Loan Number:   0149537664

Wells Fargo Home Mortgage recently received an inquiry regarding a
payoff of your mortgage.  In our efforts to provide customers with
superior service, we are enclosing a copy of the statement we provided.

The statement indicates your loan interest is calculated on a daily
basis.  We will therefore accept the full payment amount whenever it
is paid and collect interest only to the date of that payment.

We urge you to remember to take care of these important items.  By doing
so, you will avoid unnecessary expense and delay:

BORROWER'S RESPONSIBILITIES:
*  If you're planning to move, please be sure to provide us with your
   new mailing address, so we can send you any escrow balance, year-end
   interest statements, and other documents in a timely manner.  For
   your convenience, you can indicate your new address on the Payoff
   Transmittal Form included in this packet.

*  Please do not place a stop payment on any monthly payment/draft
   already made.  Any overpayment will be refunded to you.  Figures
   may be adjusted if any check/draft previously credited is rejected
   by the institution upon which it is drawn.


If you have questions, please call our servicing representatives at
(866) 234-8271, Monday through Friday, 6 AM to 10 PM; and Saturday,
8 AM to 2 PM, Central Time.

708/0149537664/XP522/2/4/0000030153650
February 27, 2008


Jolandra O'Hare
773 572 5862

                                                    (773)572-5862
Mortgagor:        Daniel G O'Hare
Property:         1838 N. Richmond Street
                  Chicago IL 60647
708 Loan Number:  0149537664
Loan Type:        Conventional

THIS STATEMENT REFLECTS THE PAYOFF DATE YOU PROVIDED.  ALL FIGURES MUST
BE VERIFIED 24 HOURS PRIOR TO PAYOFF.  FOR YOUR CONVENIENCE, PLEASE CALL
OUR VOICE RESPONSE SYSTEM AND SELECT THE APPROPRIATE PAYOFF QUOTE
OPTIONS.  ALL FIGURES SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER.
ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.


1.  TOTAL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER NOTE/SECURITY
INSTRUMENT
Note: This Note/Security Instrument is due for payment March 01, 2008
Unpaid Principal Balance                        $        300,000.00
Interest at  6.00000% from 02-01-08 to 03-01-08          1,500.00
TOTAL AMOUNT DUE UNDER NOTE/SECURITY INSTRUMENT $        301,500.00
2.  ADDITIONAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE
Recording Fees                                              36.50
Fax Fee                                                       .00
Obligation Fee                                                .00
Buydown/Corp Subsidy                                         .00
TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE $          36.50
TOTAL AMOUNT DUE                                $        301,536.50

708/0149537664/XP522/3/4/0000030153650
Payoff - Page 3 - 708 Loan Number 0149537664

Timing of Last Payment:
This figure is accurate until March 01, 2008, or until any activity
occurs on the account.  Funds received after that date will be subject
to an additional $ 49.32 of interest per Day.  If the payoff
payment is made 15 days beyond the current payment due date, a late
charge of $ 75.00 will be assessed.  Please add that amount to the
payoff total.

Adjustments to Figures:  Figures may be adjusted if--
- any check/draft previously credited is rejected by the institution upon
  which it is drawn


We must receive funds to cover a deficiency on the following business
day.  Interest will continue to accrue until we receive full payment.

In order to record the payoff of this loan with your county, any funds
previously received may not be rejected by the institution upon which
they are drawn.

708/0149537664/XP523/4/4/0000030153650

PAYOFF TRANSMITTAL FORM
The attached coupon must accompany the payoff funds to ensure proper
processing and forwarding of future documentation.  It is only necessary
to fax the form below to (515) 324-3867 if you have wired funds and the
mailing address is changing.

708 Loan Number 0149537664
Daniel G O'Hare
Jolanda Rivera
1838  N. Richmond Street
Chicago IL 60647

WHERE TO SEND PAYOFF FUNDS
By Wire:                                    By Overnight:
Wells Fargo Bank, N.A.                       Wells Fargo Home Mortgage
Beneficiary Bank ABA: 121000248             Attn:  Payoffs, MAC X2302-045
Beneficiary Bank Acct: 4127400093           1 Home Campus
Special Information for Beneficiary:        Des Moines  IA  50328
Apply funds to: 708 loan 0149537664
Mortgagor: Daniel G O'Hare
Sender's Name and Phone Number

FUNDS MUST BE RECEIVED BY 2 P.M. CENTRAL TIME FOR SAME-DAY PROCESSING.
PAYOFFS ARE NOT POSTED ON WEEKENDS OR HOLIDAYS, INTEREST WILL BE
ADDED TO THE ACCOUNT FOR THESE DAYS.
ALL FIGURES ARE SUBJECT TO FINAL VERIFICATION BY THE NOTEHOLDER
ALL REMITTANCES MUST BE MADE BY CASHIER'S CHECK OR CERTIFIED FUNDS.

CHANGE OF ADDRESS/NEW MAILING ADDRESS
Please type or print below.  This ensures receipt of the escrow
balance, year-end interest statement, and all other applicable
documentation.

             Please detach and include with payoff.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                         PAYOFF COUPON
Daniel G O'Hare
Jolanda Rivera
1838  N. Richmond Street
Chicago IL 60647
708 Loan No: 0149537664

                        TOTAL PAYOFF AMOUNT $ 301,536.50
                        THIS FIGURE IS ACCURATE UNTIL 03-01-08

                        AMOUNT REMITTED    _____

Wells Fargo Home Mortgage
ATTN: PAYOFFS, MAC X2302-045        New Mailing Address:
1 HOME CAMPUS
DES MOINES, IA 50328               Street _____

                        City/State/ZIP _____

# EXHIBIT 5

File No. Parzych Chicago

## APPRAISAL OF



### LOCATED AT:

1838 N. RICHMOND
CHICAGO, IL  60647-5126

### FOR:

RIVERA
1838 N. RICHMOND
CHICAGO, IL 60647

### BORROWER:

NA

### AS OF:

February 25, 2008

### BY:

CAVAN P. CUNNINGHAM

File No. Parzych Chicago

02/24/2008

RIVERA
1838 N. RICHMOND
CHICAGO, IL 60647

File Number:  Parzych Chicago

DEAR MRS. RIVERA:

In accordance with your request, I have personally inspected and appraised the real property at:

1838 N. RICHMOND
CHICAGO, IL 60647-5126

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved. The property rights appraised are the fee simple Interest in the site and improvements.

In my opinion, the estimated market value of the property as of  February 25, 2008       is:

$370,000
Three Hundred Seventy Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions, final estimate of value, descriptive photographs, limiting conditions and appropriate certifications.

SINCERELY,

CAVAN P. CUNNINGHAM

## Small Residential Income Property Appraisal Report
File No. Parzych Chicago

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address 1838 N. RICHMOND | City CHICAGO | State IL | Zip Code 60647-5126 |
|---|---|---|---|

Borrower NA    Owner of Public Record PARZYCH    County COOK

Legal Description SEE TITLE POLICY FOR COMPLETE LEGAL DESCRIPTION.

| Assessor's Parcel # 13-36-312-022-0000 | Tax Year 06 | R.E. Taxes $ 4,422.00 |
|---|---|---|

Neighborhood Name NA    Map Reference MSA/MD 16974-031    Census Tract 2225.00

Occupant [X] Owner [ ] Tenant [ ] Vacant    Special Assessments $ NA    PUD    HOA $ NA    [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) ESTIMATE OF VALUE

Lender/Client RIVERA    Address 1838 N. RICHMOND, CHICAGO, IL 60647

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). NOT A SALE

I [ ] did [X] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. NA

Contract Price $ NA    Date of Contract NA    Is the property seller the owner of public record? [X] Yes [ ] No    Data Source(s) TAX RECORDS

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [X] No

If Yes, report the total dollar amount and describe the items to be paid.  $ NA    NA

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [X] Urban [ ] Suburban [ ] Rural | | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 70 % |
| Built-Up [X] Over 75% [ ] 26-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | 1(000) Low | | 2-4 Unit | 15 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 150 Low | NEW | Multi-Family | 5 % |
| Neighborhood Boundaries  See Attached Addendum | | | | | | 1,150 High | 135 | Commercial | 10 % |
| | | | | | | 350 Pred. | 100 | Other | % |

Neighborhood Description  THE SUBJECT NEIGHBORHOOD IS CONVENIENTLY LOCATED APPROXIMATELY 5 MILES NORTH WEST OF DOWNTOWN CHICAGO. THE NEIGHBORHOOD IS LOCATED IN GOOD RELATIONSHIP TO ALL COMMUNITY SERVICES AND AMENITIES INCLUDING SCHOOLS, HOSPITALS, RECREATION FACILITIES, SHOPPING, AND PUBLIC TRANSPORTATION. THE AREA HAS GOOD MARKET APPEAL.

Market Conditions (including support for the above conclusions)  MARKET CONDITIONS WITHIN THE SUBJECT MIRROR GENERAL CONDITIONS IN THE MIDWEST. MONEY IS READILY AVAILABLE AT ATTRACTIVE RATES. ALL TYPES OF FINANCING VEHICLES ARE AVAILABLE WITH CONVENTIONAL FIXED RATE MORTGAGE MOST PREVALENT. MARKETING TIME IS CONSIDERED TO BE OVER 6 MONTHS.

| Dimensions 25X120 | Area 3,000 SQ.FT. | Shape RECTANGULAR | View RESIDENTIAL |
|---|---|---|---|

Specific Zoning Classification RS-3    Zoning Description RESIDENTIAL

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street ASPHALT | [X] | [ ] |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley ASPHALT | [X] | [ ] |

FEMA Special Flood Hazard Area [ ] Yes [X] No    FEMA Flood Zone X    FEMA Map # 170074 0415F    FEMA Map Date 11/06/2000

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials/condition | | INTERIOR materials/condition | |
|---|---|---|---|---|---|---|---|
| Units [X] Two [ ] Three [ ] Four | | [ ] Concrete Slab [ ] Crawl Space | | Foundation Walls BRICK/AVG | | Floors HW/TILE/GD | |
| [ ] Accessory Unit (describe below) | | [X] Full Basement [ ] Partial Basement | | Exterior Walls ALUMINUM/GD | | Walls DRYW/PLAS/GD | |
| # of Stories 2 | # of bldgs. 1 | Basement Area  sq. ft. | | Roof Surface ASPH SHING/AVG | | Trim/Finish WD STND/GD | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Finish 90 % | | Gutters & Downspouts ALUMINUM/AVG | | Bath Floor TILE/AVG | |
| [X] Existing [ ] Proposed [ ] Under Const. | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type VINYL D.H./GD | | Bath Wainscot TILE/AVG | |
| Design (Style) 2-FLAT | | Evidence of [ ] Infestation | | Storm Sash/Insulated YES/GD | | Car Storage [ ] None | |
| Year Built 1879 | | [ ] Dampness [ ] Settlement | | Screens YES/GD | | [ ] Driveway # of Cars | |
| Effective Age (Yrs) 20 YRS. | | Heating/Cooling | | Amenities | | Driveway Surface | |
| Attic [ ] None | | [X] FWA [ ] HWBB [ ] Radiant | | [ ] Fireplace(s) # | [ ] WoodStove(s) # | Driveway Surface | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other  Fuel GAS | | [X] Patio/Deck 2 [ ] Fence | | [X] Garage # of Cars 2 | |
| [ ] Floor [X] Scuttle | | [X] Central Air Conditioning | | [ ] Pool [ ] Porch | | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Other | | [ ] Att. [X] Det. [ ] Built-in | |

# of Appliances [ ] Refrigerator 2 [ ] Range/Oven 2 [ ] Dishwasher 1 [ ] Disposal 0 [ ] Microwave 2 [ ] Washer/Dryer 1 [ ] Other (describe)

| Unit # 1 contains: | 5 Rooms | 2 Bedroom(s) | 1 Bath(s) | 818 Square feet of Gross Living Area |
|---|---|---|---|---|
| Unit # 2 contains: | 5 Rooms | 2 Bedroom(s) | 1 Bath(s) | 624 Square feet of Gross Living Area |
| Unit # 3 contains: | Rooms | Bedroom(s) | Bath(s) | Square feet of Gross Living Area |
| Unit # 4 contains: | Rooms | Bedroom(s) | Bath(s) | Square feet of Gross Living Area |

Additional features (special energy efficient items, etc.).  See Attached Addendum

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  THE PROPERTY IS IN GOOD CONDITION AT THE TIME OF THIS REPORT. PHYSICAL DEPRECIATION FOR NORMAL WEAR AND TEAR OF ITEMS WHICH CANNOT BE REPAIRED OR REPLACED .NO FUNCTIONAL OR EXTERNAL OBSOLESCENCE NOTED.

## Small Residential Income Property Appraisal Report

File No. Parzych Chicago

| | | | |
|---|---|---|---|
| Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? | | ☐ Yes ☒ No If Yes, describe | |
| Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe | | | |
| Is the property subject to rent control? ☐ Yes ☒ No If Yes, describe | | | |

The following properties represent the most current, similar, and proximate comparable rental properties to the subject property. This analysis is intended to support the opinion of the market rent for the subject property.

| FEATURE | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| | 1838 N. RICHMOND | 1924 N. MOZART ST. | 1929 N. SPAULDING AVE. | 1722 N. ST. LOUIS |
| Address | CHICAGO | CHICAGO | CHICAGO | CHICAGO |
| Proximity to Subject | | 0.15 Miles | 0.52 Miles | 0.69 Miles |
| Current Monthly Rent | $ 2,050 | $ 2,030 | $ 1,500 | $ 2,150 |
| Rent/Gross Bldg. Area | $ 1.24 sq. ft. | $ 1.01 sq. ft. | $ 0.69 sq. ft. | $ 1.36 sq. ft. |
| Rent Control | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No |
| Data Source(s) | OWNER | MLS#06747595 | MLS#06531994 | MLS#06720236 |
| Date of Lease(s) | M/M | M/M | M/M | M/M |
| Location | URBAN | URBAN | URBAN | URBAN |
| Actual Age | 126+/- Years | 115 YRS. | 103 YRS. | 118 YRS. |
| Condition | GOOD | GOOD | AVERAGE | GOOD |
| Gross Building Area | 1650 sq.ft. | 2,018 SQ.FT. | 2,168 SQ.FT. | 1,582 SQ.FT. |

| Unit Breakdown | Rm Count Tot | Br | Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot | Br | Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot | Br | Ba | Size Sq. Ft. | Monthly Rent | Rm Count Tot | Br | Ba | Size Sq. Ft. | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # 1 | 5 | 2 | 1 | 818 | | 4 | 2 | 1 | 1,009 | $ 1,150 | 6 | 3 | 1 | 1,084 | $ 750 | 4 | 2 | 1 | 781 | $ 1,400 |
| Unit # 2 | 5 | 2 | 1 | 624 | | 6 | 3 | 1 | 1,009 | $ 880 | 6 | 3 | 1 | 1,084 | $ 750 | 5 | 3 | 1.5 | 781 | $ 750 |
| Unit # 3 | | | | | | | | | | $ | | | | | $ | | | | | $ |
| Unit # 4 | | | | | | | | | | $ | | | | | $ | | | | | $ |
| Utilities Included | GAS HEAT | | GAS HEAT | | | ELECTRIC GAS HEAT | | | ELECTRIC HEAT | | | | | | | | | | | |

Analysis of rental data and support for estimated market rents for the individual subject units reported below (including the adequacy of the comparables, rental concessions, etc.)
RENTS ARE EXTRACTED FROM THE MARKET PLACE. COMP 3 IS DUPLEXED WITH THE 1ST FLOOR AND BASEMENT.

Rent Schedule: The appraiser must reconcile the applicable indicated monthly market rents to provide an opinion of the market rent for each unit in the subject property.

| | Lease Date | | Per Unit | | Total | Per Unit | | Total |
|---|---|---|---|---|---|---|---|---|
| Unit # | Begin Date | End Date | Unfurnished | Furnished | Rents | Unfurnished | Furnished | Rents |
| 1 | M/M | M/M | $ 1,200 | NA | $ 1,200 | $ 1,200 | NA | $ 1,200 |
| 2 | M/M | M/M | 850 | NA | 850 | 850 | NA | 850 |
| 3 | | | | | | | | |
| 4 | | | | | | | | |
| Comment on lease data | | | Total Actual Monthly Rent | | $ 2,050 | Total Gross Monthly Rent | | $ 2,050 |
| | | | Other Monthly Income (itemize) | | $ | Other Monthly Income (itemize) | | $ |
| | | | Total Actual Monthly Income | | $ 2,050 | Total Estimated Monthly Income | | $ 2,050 |

Utilities included in estimated rents ☐ Electric ☐ Water ☐ Sewer ☒ Gas ☐ Oil ☐ Cable ☐ Trash collection ☒ Other (describe) HEAT

Comments on actual or estimated rents and other monthly income (including personal property) RENTS ARE EXTRACTED FROM THE MARKET PLACE.

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) TAX RECORDS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) TAX RECORDS

Report the results of the research and analysis of the prior sale history of the subject property and comparable sales (report additional prior sales on page 4).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NA | NA | NA | NA |
| Price of Prior Sale/Transfer | NA | NA | NA | NA |
| Data Source(s) | TAX RECORDS | TAX RECORDS | TAX RECORDS | TAX RECORDS |
| Effective Date of Data Source(s) | 02/25/2008 | 02/25/2008 | 02/25/2008 | 02/25/2008 |

Analysis of prior sale history for the subject property and comparable sales THE SUBJECT PROPERTY HAS NOT BEEN SOLD IN THE PAST 3 YRS. ALL COMPS HAVE NOT BEEN SOLD IN THE PAST 12 MONTHS OTHER THEN NOTED IN THE ABOVE REPORT.

## Small Residential Income Property Appraisal Report

File No. Parzych Chicago

There are **18** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 290,000 to $ 415,000.

There are **8** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 279,000 to $ 450,000.

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | +(-) Adjustment | COMPARABLE SALE NO. 2 | +(-) Adjustment | COMPARABLE SALE NO. 3 | +(-) Adjustment |
|---|---|---|---|---|---|---|---|
| | 1838 N. RICHMOND | 1717 N. RICHMOND ST. | | 1713 N. ALBANY AVE. | | 1828 N. ALBANY AVE. | |
| Address | CHICAGO | CHICAGO | | CHICAGO | | CHICAGO | |
| Proximity to Subject | | 0.14 Miles | | 0.27 Miles | | 0.25 Miles | |
| Sale Price | $ NA | $ 394,000 | | $ 400,000 | | $ 325,000 | |
| Sale Price/Gross Bldg. Area | $ 0.00 sq. ft. | $ 155.42 sq. ft. | | $ 173.61 sq. ft. | | $ 150.46 sq. ft. | |
| Gross Monthly Rent | $ 2,050 | $ 3,000 | | $ 2,300 | | $ 1,800 | |
| Gross Rent Multiplier | | 131.33 | | 173.91 | | 180.56 | |
| Price Per Unit | $ | $ 197,000 | | $ 200,000 | | $ 162,500 | |
| Price Per Room | $ | $ 35,818 | | $ 30,769 | | $ 27,083 | |
| Price Per Bedroom | $ | $ 78,800 | | $ 66,667 | | $ 54,167 | |
| Rent Control | [ ] Yes [X] No | [ ] Yes [X] No | | [ ] Yes [X] No | | [ ] Yes [X] No | |
| Data Source(s) | | MLS#06387166 | | MLS#06409816 | | MLS#06447278 | |
| Verification Source(s) | | TAX RECORDS | | TAX RECORDS | | TAX RECORDS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) Adjustment | DESCRIPTION | +(-) Adjustment | DESCRIPTION | +(-) Adjustment |
| Sales or Financing | NA | CONVENTIONAL | | CONVENTIONAL | | CONVENTIONAL | |
| Concessions | | NONE KNOWN | | NONE KNOWN | | NONE KNOWN | |
| Date of Sale/Time | NA | 06/27/07 | | 03/29/07 | | 06/29/07 | |
| Location | URBAN | URBAN | | URBAN | | URBAN | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 3,000 SQ.FT. | 4,500 SQ.FT. | -5,000 | 2,900 SQ.FT. | | 3,125 SQ.FT. | |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | 2-FLAT | 2-FLAT | | 2-FLAT | | 2-FLAT | |
| Quality of Construction | ALUMINUM | FRAME | | ALUM/FRAME | | ALUMINUM | |
| Actual Age | 128+/- Years | 116 YRS. | | 116 YRS. | | 116 YRS. | |
| Condition | GOOD | AVERAGE | 10,000 | AVERAGE | 10,000 | AVERAGE | 10,000 |
| Gross Building Area 30 | 1860 sq.ft. | 2,535 SQ.FT. | -26,600 | 2,304 SQ.FT. | -19,800 | 2,160 SQ.FT. | -15,300 |

| Unit Breakdown | Total | Bdrms. | Baths | Total | Bdrms. | Baths | +(-) Adjustment | Total | Bdrms. | Baths | +(-) Adjustment | Total | Bdrms. | Baths | +(-) Adjustment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # 1 | 6 | 2 | 1 | 6 | 3 | 1 | -5,000 | 5 | 2 | 1 | | 6 | 3 | 1 | -5,000 |
| Unit # 2 | 5 | 2 | 1 | 5 | 2 | 1 | | 8 | 4 | 1.5 | -16,000 | 6 | 3 | 1 | -5,000 |
| Unit # 3 | | | | | | | | | | | | | | | |
| Unit # 4 | | | | | | | | | | | | | | | |

| | SUBJECT | COMPARABLE SALE NO. 1 | +(-) Adjustment | COMPARABLE SALE NO. 2 | +(-) Adjustment | COMPARABLE SALE NO. 3 | +(-) Adjustment |
|---|---|---|---|---|---|---|---|
| Basement Description | FULL | ATTIC FINISH | | FULL | | FULL | |
| Basement Finished Rooms | 2 BD/ 1 BATH | 3 ROOMS/1 BA | | 4 ROOMS | 7,000 | NONE | 22,000 |
| Functional Utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/Cooling | FWA/CAC | SPACE/NONE | 5,000 | FWA/CAC | | FWA/NONE | 6,000 |
| Energy Efficient Items | BASIC | BASIC | | BASIC | | BASIC | |
| Parking On/Off Site | 2 CAR GARAGE | 2 CAR GARAGE | | 2 CAR GARAGE | | 2 CAR GARAGE | |
| Porch/Patio/Deck | DECK | DECK | | DECK | | NONE | 7,000 |
| Fence | FENCE | FENCE | | FENCE | | FENCE | |
| | | | | | | | |
| Net Adjustment (Total) | | [ ] + [X] - | $ 21,600 | [ ] + [X] - | $ 18,600 | [X] + [ ] - | $ 18,700 |
| Adjusted Sale Price | | Net Adj. -5.5 % | | Net Adj. 4.7 % | | Net Adj. 5.7 % | |
| of Comparables | | Gross Adj. 13.1 % $ 372,400 | | Gross Adj. 21.5 % $ 381,400 | | Gross Adj. 21.7 % $ 343,700 |
| Adj. Price Per Unit (Adj. SP Comp / # of Comp Units) | | $ 186,200 | | $ 190,700 | | $ 171,850 | |
| Adj. Price Per Room (Adj. SP Comp / # of Comp Rooms) | | $ 33,855 | | $ 29,338 | | $ 28,642 | |
| Adj. Price Per Bdrm. (Adj. SP Comp / # of Comp Bedrooms) | | $ 74,480 | | $ 63,567 | | $ 57,283 | |
| Value Per Unit | $ 185,000 X | 2 Units = $ 370,000 | Value Per GBA | 224.00 X | 1650 sq.ft. GBA = $ 369,600 |
| Value Per Rm. | $ 37,000 X | 10 Rooms = $ 370,000 | Value Per Bdrms. | 92,500 X | 4 Bdrms. = $ 370,000 |

Summary of Sales Comparison Approach including reconciliation of the above indicators of value. ALL SALES ARE CLOSED IN THE PAST 12 MONTHS AND ARE SIMILAR TO THE SUBJECT WITH RESPECT TO DESIGN, AGE, AND QUALITY OF CONSTRUCTION. ROOM DIFFERENCE ADJUSTED AT $5,000 PER ROOM. BATHROOM ADJUSTMENT FIGURED AT $12,000 PER FULL BATHROOM. DIFFERENCE IN GLA IS ADJUSTED AT $30 PSF ROUNDED.

Indicated Value by Sales Comparison Approach $ 370,000

Total gross monthly rent $ 2,050 X gross rent multiplier (GRM) 180.00 = $ 369,000 Indicated Value by the Income Approach

Comments on income approach including reconciliation of the GRM

Indicated Value by: Sales Comparison Analysis $ 370,000     Income Approach $369,000     Cost Approach (if developed) $ 0

THE COMPARISON APPROACH BEST REFLECTS THE ATTITUDES OF BUYERS AND SELLERS IN THE RESIDENTIAL REAL ESTATE MARKET. THE PRESENCE OF DEPRECIATION REDUCES THE COST APPROACH EFFECTIVENESS, AND THE LACK OF RENTAL DATA VIRTUALLY ELIMINATES THE RELEVANCY OF THE INCOME APPROACH.

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair. THE REPORT IS BASED ON FEE SIMPLE OWNERSHIP AND SUBJECT TO CERTIFICATION AND LIMITING CONDITIONS. COMMENTS ATTACHED.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 370,000 as of 02/25/2008, which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 72 March 2005     Page 2 of 7     Produced using ACI software, 800.234.8727 www.aciweb.com     Fannie Mae Form 1025 March 2005
1025_03 041905

CP Appraisal

**Small Residential Income Property Appraisal Report**   File No. Parzych Chicago

---

COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)

| | | OPINION OF SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | |
|---|---|---|---|
| ☐ ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | | | |
| Source of cost data | Dwelling          1,850 Sq. Ft. @ $          . . . . . . . . . . . . . . = $ | 0 |
| Quality rating from cost service          Effective date of cost data | Bsmt. 800 Sq.Ft.          Sq. Ft. @ $          . . . . . . . . . . . . . . = $ | 0 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | |
| | Garage/Carport          Sq. Ft. @ $          . . . . . . . . . . . . . . = $ | |
| | Total Estimate of Cost-New . . . . . . . . . . . . . . . . . . . . . . . . = $ | 0 |
| | Less          Physical          Functional          External | |
| | Depreciation          = $ (          D) | |
| | Depreciated Cost of Improvements . . . . . . . . . . . . . . . . . . . . = $ | 0 |
| | "As-is" Value of Site Improvements . . . . . . . . . . . . . . . . . . . . = $ | |
| Estimated Remaining Economic Life (HUD and VA only)          30 Years | INDICATED VALUE BY COST APPROACH . . . . . . . . . . . . . . . . . . = $ | 0 |

PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes   ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?   ☐ Yes   ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete?   ☐ Yes   ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

## Small Residential Income Property Appraisal Report     File No. Parzych Chicago

This report form is designed to report an appraisal of a two- to four-unit property, including a two- to four-unit property in a planned unit development (PUD). A two- to four-unit property located in either a condominium or cooperative project requires the appraiser to inspect the project and complete the project information section of the Individual Condominium Unit Appraisal Report or the Individual Cooperative Interest Appraisal Report and attach it as an addendum to this report.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1.   The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2.   The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements, including each of the units. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3.   The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4.   The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5.   The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6.   The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**Small Residential Income Property Appraisal Report**    File No. Parzych Chicago

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property, including all units. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison and income approaches to value. I have adequate market data to develop reliable sales comparison and income approaches to value for this appraisal assignment. I further certify that I considered the cost approach to value but did not develop it, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

**Small Residential Income Property Appraisal Report**   File No. Parzych Chicago

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature _CPC_____ | Signature _____ |
| Name CAVAN P. CUNNINGHAM | Name _____ |
| Company Name _____ | Company Name _____ |
| Company Address _____ | Company Address _____ |
| Telephone Number _____ | Telephone Number _____ |
| Email Address _____ | Email Address _____ |
| Date of Signature and Report 02/25/2008 | Date of Signature 05/30/2007 |
| Effective Date of Appraisal 02/25/2008 | State Certification # _____ |
| State Certification # 558004518 | or State License # _____ |
| or State License # _____ | State IL _____ |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License _____ |
| State IL _____ | |
| Expiration Date of Certification or License 09/30/2009 | |

ADDRESS OF PROPERTY APPRAISED
1838 N. RICHMOND
CHICAGO, IL 60647-5126

APPRAISED VALUE OF SUBJECT PROPERTY $ 370,000

LENDER/CLIENT
Name RIVERA
Company Name RIVERA
Company Address 1838 N. RICHMOND
CHICAGO, IL 60647
Email Address _____

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
  Date of Inspection _____
☐ Did inspect interior and exterior of subject property
  Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
  Date of Inspection _____

CP Appraisal

## Small Residential Income Property Appraisal Report

File No. Parzych Chicago

| FEATURE | SUBJECT | | COMPARABLE RENTAL NO. 4 | | COMPARABLE RENTAL NO. 5 | | COMPARABLE RENTAL NO. 6 | |
|---|---|---|---|---|---|---|---|---|
| 1838 N. RICHMOND | | | | | | | | |
| Address CHICAGO | | | | | | | | |
| Proximity to Subject | | | | | | | | |
| Current Monthly Rent | $ 2,050 | | $ | | $ | | $ | |
| Rent/Gross Bldg. Area | $ 1.24 sq. ft. | | $ sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Rent Control | Yes X No | | Yes No | | Yes No | | Yes No | |
| Data Source(s) | OWNER | | | | | | | |
| Date of Lease(s) | M/M | | | | | | | |
| Location | URBAN | | | | | | | |
| Actual Age | 128+/- Years | | | | | | | |
| Condition | GOOD | | | | | | | |
| Gross Building Area | 1650 sq.ft. | | | | | | | |

| Unit Breakdown | Rm Count | | | Size Sq. Ft. | Rm Count | | | Size Sq. Ft. | Monthly Rent | Rm Count | | | Size Sq. Ft. | Monthly Rent | Rm Count | | | Size Sq. Ft. | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tot | Br | Ba | | Tot | Br | Ba | | | Tot | Br | Ba | | | Tot | Br | Ba | | |
| Unit # 1 | 5 | 2 | 1 | 816 | | | | | $ | | | | | $ | | | | | $ |
| Unit # 2 | 5 | 2 | 1 | 624 | | | | | $ | | | | | $ | | | | | $ |
| Unit # 3 | | | | | | | | | $ | | | | | $ | | | | | $ |
| Unit # 4 | | | | | | | | | $ | | | | | $ | | | | | $ |
| Utilities Included | GAS | | | | | | | | | | | | | | | | | | |
| | HEAT | | | | | | | | | | | | | | | | | | |

Analysis of rental data. THE ELECTRONIC PHOTOGRAPHS AND SIGNATURES INCORPORATED INTO THIS REPORT ARE ORIGINALS AND PASSWORD PROTECTED. THIS REPORT MAY CONTAIN DIGITAL SIGNATURES WHICH ARE IN CONFORMANCE WITH USPAP SECTION 8. THE ATTACHED PHOTOGRAPHS FOR THE COMPARABLE SALES MAY BE FROM THE MLSNI, THEREFORE A FOR SALE SIGN MAY BE VISIBLE IN THE PHOTO. THE MLSNI PHOTOGRAPH PROVIDES AN ACCURATE REPRESENTATION OF THE COMPARABLE PROPERTY AT THE TIME OF ITS LISTING ON THE MARKET. THE PHOTOS ARE USED IN PREFERENCE TO PHOTOS TAKEN DURING THE EXTERIOR INSPECTION DUE TO POTENTIAL CONFLICT WITH THE FAIR LENDING ACT POLICIES, SUCH AS PEOPLE APPEARING IN THE PHOTOGRAPHS.

| FEATURE | SUBJECT | | COMPARABLE RENTAL NO. 7 | | COMPARABLE RENTAL NO. 8 | | COMPARABLE RENTAL NO. 9 | |
|---|---|---|---|---|---|---|---|---|
| 1838 N. RICHMOND | | | | | | | | |
| Address CHICAGO | | | | | | | | |
| Proximity to Subject | | | | | | | | |
| Current Monthly Rent | $ 2,050 | | $ | | $ | | $ | |
| Rent/Gross Bldg. Area | $ 1.24 sq. ft. | | $ sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Rent Control | Yes X No | | Yes No | | Yes No | | Yes No | |
| Data Source(s) | OWNER | | | | | | | |
| Date of Lease(s) | M/M | | | | | | | |
| Location | URBAN | | | | | | | |
| Actual Age | 128+/- Years | | | | | | | |
| Condition | GOOD | | | | | | | |
| Gross Building Area | 1650 sq.ft. | | | | | | | |

| Unit Breakdown | Rm Count | | | Size Sq. Ft. | Rm Count | | | Size Sq. Ft. | Monthly Rent | Rm Count | | | Size Sq. Ft. | Monthly Rent | Rm Count | | | Size Sq. Ft. | Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tot | Br | Ba | | Tot | Br | Ba | | | Tot | Br | Ba | | | Tot | Br | Ba | | |
| Unit # 1 | 5 | 2 | 1 | 816 | | | | | $ | | | | | $ | | | | | $ |
| Unit # 2 | 5 | 2 | 1 | 624 | | | | | $ | | | | | $ | | | | | $ |
| Unit # 3 | | | | | | | | | $ | | | | | $ | | | | | $ |
| Unit # 4 | | | | | | | | | $ | | | | | $ | | | | | $ |
| Utilities Included | GAS | | | | | | | | | | | | | | | | | | |
| | HEAT | | | | | | | | | | | | | | | | | | |

Analysis of rental data.

| Borrower: NA | | | File No.: Perzych Chicago | |
|---|---|---|---|---|
| Property Address: 1838 N. RICHMOND | | | Case No.: | |
| City: CHICAGO | | State: IL | Zip: 60647-5126 | |
| Lender: RIVERA | | | | |

**Neighborhood Boundaries**
THE SUBJECT IS BOUND BY ARMITAGE AVE. TO THE NORTH, NORTH AVE. TO THE SOUTH, KEDZIE AVE. TO THE WEST, AND WESTERN AVE. TO THE EAST.

**Additional Features**
TYPICAL ENERGY EFFICIENT ITEMS FOR A HOME OF THIS SIZE AND AGE. THE SUBJECT HOME FEATURES TWO RHEEM FURNACES, TWO 40 GALLON RICHMOND HOT WATER HEATERS, AND TWO 100 AMP ELECTRICAL SERVICES WITH C.B.'S. THE HOME HAS BEEN REMODELED RECENTLY AND SEVERAL UPGRADES HAVE BEEN DONE WHICH WOULD INCLUDE BUT IS NOT LIMITED TO:

- NEWER JACUZZI TUBS IN ALL THREE BATHROOMS.

- NEWER REFINISHED HARDWOOD FLOORS.

- NEWER INTERIOR PAINT.

- NEWER EXTERIOR SIDING.

- NEWER DECKS.

# Operating Income Statement

One- to Four-Family Investment Property and Two- to Four-Family Owner-Occupied Property          Parzych Chicago

Property Address
1838 N. RICHMOND                          CHICAGO                IL          60647-5126
Street                                    City                   State       Zip Code

**General Instructions:** This form is to be prepared jointly by the loan applicant, the appraiser, and the lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an "unfurnished" unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 Yes X | No | M/M | $  1,200 | $  1,200 | Electricity | | X |
| Unit No. 2 Yes X | No | M/M | $  850 | $  850 | Gas | X | |
| Unit No. 3 Yes | No | | $ | $ | Fuel Oil | | X |
| Unit No. 4 Yes | No | | $ | $ | Fuel (Other) | | X |
| **Total** | | | $  2,050 | $  2,050 | Water/Sewer | | X |
| | | | | | Trash Removal | | X |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years *(for new properties the applicant's projected income and expenses must be provided)*. This Operating Income Statement and previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures *(e.g., Applicant/Appraiser 200/300)*. If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. *(Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item.)* Income should be based on current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

## Annual Income and Expense Projection for Next 12 months

| Income *(Do not include income for owner-occupied units)* | | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|---|
| Gross Annual Rental *(from units) to be rented)* | $ | 24,600 | $ |
| Other Income *(include sources)* | + | | + |
| Total | $ | 24,600 | $ |
| Less Vacancy/Rent Loss | - | ( %) | ( %) |
| Effective Gross Income | $ | 24,600 | $ |

**Expenses** *(Do not include expenses for owner-occupied units)*

| | By Applicant/Appraiser | Lender's Underwriter |
|---|---|---|
| Electricity | | |
| Gas | | |
| Fuel Oil | | |
| Fuel ..........................(Type-        ) | | |
| Water/Sewer | 500 | |
| Trash Removal | 500 | |
| Pest Control | | |
| Other Taxes or Licenses | | |
| Casual Labor | | |
| This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating | 200 | |
| This includes the costs of contract labor and materials that are required to maintain the interiors of the living units. | | |
| General Repairs/Maintenance | 200 | |
| This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses | | |
| These are the customary expenses that a professional management company would charge to manage the property. | | |
| Supplies | 200 | |
| This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2 | 237 | |
| Miscellaneous | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Total Operating Expenses** | $  1,837 | $ |

Perzych Chicago

## Replacement Reserve Schedule

Adequate replacement reserves must be calculate regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market. This represents the total average yearly reserves. Generally, all equipment and components that have a remaining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc.-should be expensed on a replacement cost basis.

| Equipment | Replacement Cost | | Remaining Life | | | | By Applicant/ Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|---|---|
| Stoves/Ranges | @$ 400.00 | ea. ÷ | 15 | Yrs. x | 2 | Units =$ | 53.33 | $ |
| Refrigerators | @$ 400.00 | ea. ÷ | 15 | Yrs. x | 2 | Units =$ | 53.33 | $ |
| Dishwashers | @$ | ea. ÷ | | Yrs. x | | Units =$ | | $ |
| A/C Units | @$ | ea. ÷ | | Yrs. x | | Units =$ | | $ |
| C. Washer/Dryers | @$ | ea. ÷ | | Yrs. x | | Units =$ | | $ |
| HW Heaters | @$ 300.00 | ea. ÷ | 20 | Yrs. x | 2 | Units =$ | 30.00 | $ |
| Furnace(s) | @$ 2,000.00 | ea. ÷ | 20 | Yrs. x | 1 | Units =$ | 100.00 | $ |
| (Other) | @$ | ea. ÷ | | Yrs. x | | Units =$ | | $ |

Roof ............. @$ _____ ÷ _____ Yrs. x One Bldg. = $ _____ $ _____

Carpeting (Wall to Wall)                                                    Remaining Life

(Units) _____ Total Sq. Yds. @ $ _____ Per Sq. Yd. ÷ _____ Yrs. = $ _____ $ _____
(Public Areas) _____ Total Sq. Yds. @ $ _____ Per Sq. Yd. ÷ _____ Yrs. = $ _____ $ _____

**Total Replacement Reserves. (Enter on Pg. 1)**          $ 236.66 $

### Operating Income Reconciliation

$ 24,600.00 - $ 1,837.00 =$ 22,763.00 ÷ 12= $ 1,896.92
Effective gross Income — Total Operating Expenses — Operating Income — Monthly Operating Income

$ 1,896.92 - $ _____ =$ 1,896.92
Monthly Operating Income — Monthly Housing Expenses — Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's Instructions for 2-4 Family Owner-Occupied Properties

* If Monthly Operating Income is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

* The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the **subject property** to the borrower's stable monthly income.

Underwriter's Instructions for 1-4 Family Investment Properties

* If Net Cash Flow is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003. If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

* The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total monthly housing expense for the borrower's **primary residence** to the borrower's stable monthly income.

Appraiser's Comments *(including sources for data and rationale for the projections)*

CAVAN P. CUNNINGHAM                    C P C _____            02/25/2008
Appraiser Name                         Appraiser Signature        Date

Underwriter's Comments and Rationale for Adjustments

_____            _____            _____
Underwriter Name           Underwriter Signature       Date

Freddie Mac
Form 998  Aug 88

PAGE 2 OF 2
Produced using AC version, 800.234.4727 www.alamode.com
CP Appraisal

Fannie Mae
Form 216  Aug 88

**SUBJECT PROPERTY PHOTO ADDENDUM**

| | |
|---|---|
| Borrower: NA | |
| Property Address: 1838 N. RICHMOND | File No.: Parzych Chicago |
| | Case No.: |
| City: CHICAGO | State: IL | Zip: 60647-5126 |
| Lender: RIVERA | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: February 25, 2008
Appraised Value: $ 370,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: NA | | File No.: Parzych Chicago |
| Property Address: 1838 N. RICHMOND | | Case No.: |
| City: CHICAGO | State: IL | Zip: 60647-5128 |
| Lender: RIVERA | | |



**COMPARABLE SALE #1**

1717 N. RICHMOND ST.
CHICAGO
Sale Date: 06/27/07
Sale Price: $ 394,000



**COMPARABLE SALE #2**

1713 N. ALBANY AVE.
CHICAGO
Sale Date: 03/29/07
Sale Price: $ 400,000



**COMPARABLE SALE #3**

1828 N. ALBANY AVE.
CHICAGO
Sale Date: 06/20/07
Sale Price: $ 325,000

**COMPARABLE RENTALS PHOTO ADDENDUM**

| | |
|---|---|
| Borrower: NA | |
| Property Address: 1838 N. RICHMOND | File No.: Panzych Chicago |
| | Case No.: |
| City: CHICAGO | State: IL | Zip: 80647-5126 |
| Lender: RIVERA | |



**COMPARABLE RENTAL #1**

1924 N. MOZART ST.
CHICAGO



**COMPARABLE RENTAL #2**

1929 N. SPAULDING AVE.
CHICAGO



**COMPARABLE RENTAL #3**

1722 N. ST. LOUIS
CHICAGO

**FLOORPLAN**

| Borrower: NA | | File No.: Parzych Chicago |
|---|---|---|
| Property Address: 1838 N. RICHMOND | | Case No.: |
| City: CHICAGO | State: IL | Zip: 60647-5126 |
| Lender: RIVERA | | |



| SKETCH CALCULATIONS | Perimeter | Area |
|---|---|---|
| A1 : 0.5 x 20.2X0.2 = | | 1.7 |
| A2 : 0.5 x 20.0x0.3 = | | 2.9 |
| A3 : 0.5 x 0.1x49.8 = | | 3.2 |
| A4 : 0.5 x 0.3x49.8 = | | 8.4 |
| A5 : 19.9 x 49.8 = | | 990.7 |
| First Floor | | 1006.9 |
| A6 : 0.5 x 0.0x50.0 = | | 0.2 |
| A7 : 0.5 x 0.3x50.0 = | | 6.5 |
| A8 : 12.7 x 50.0 = | | 636.7 |
| Second Floor | | 643.4 |
| Total Living Area | | 1650.3 |

**LOCATION MAP**

| | |
|---|---|
| Borrower: NA | File No.: Parzych Chicago |
| Property Address: 1838 N. RICHMOND | Case No.: |
| City: CHICAGO | State: IL | Zip: 60647-5126 |
| Lender: RIVERA | |



| Borrower: NA | File No.: Parzych Chicago |
| Property Address: 1838 N. RICHMOND | Case No.: |
| City: CHICAGO | State: IL | Zip: 60647-5126 |
| Lender: RIVERA | |



## FloodMap Legend

**Flood Zones**

Areas inundated by 500-year flooding

Areas outside of the 100- and 500-year floodplains

Areas inundated by 100-year flooding

Areas inundated by 100-year flooding with velocity hazard

Floodway areas

Floodway areas with velocity hazard

Areas of undetermined but possible flood hazards

Areas not mapped on any published FIRM

### Flood Information

Community: 170074 - CHICAGO, CITY OF

Property is not in a FEMA special flood hazard area.

Map Number: 170074 0415F    Map Date: 11/06/2000
Panel: 0415F    FIPS: 17031
Zone: X

Neither Transamerica Flood Hazard Certification (TFHC) nor ACI make any representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose. Neither TFHC nor ACI nor the seller of this flood report shall have any liability to any third party for any use or misuse of this flood report.

| | |
|---|---|
| Borrower: NA | File No.: Parzych Chicago |
| Property Address: 1838 N. RICHMOND | Case No.: |
| City: CHICAGO | State: IL  Zip: 60647-5126 |
| Lender: RIVERA | |



**State of Illinois**
Department of Financial and Professional Regulation
Division of Professional Regulation

LICENSE NO:
553.003418

EXPIRES:
09/30/2009

**Certified Residential Real Estate Appraiser**

CAVAN P CUNNINGHAM
18W240 GOVERNORS TRAIL
OAK BROOK, IL  60523

Issue Date: 11/20/2007

DEAN MARTINEZ
Secretary

DANIEL E. BLUTHARDT
Director

The official status of this license can be verified at www.idfpr.com

File No. Parzych Chicago

********* INVOICE *********

File Number: Parzych Chicago                    02/28/2008

RIVERA
1838 N. RICHMOND
CHICAGO, IL 60647

Borrower :              NA

Invoice # :             NA
Order Date :
Reference/Case # :
PO Number :

1838 N. RICHMOND
CHICAGO, IL  60647-5128

|  |  |  |
|---|---|---|
| APPRAISAL | $ | NA |
|  | $ |  |
| Invoice Total | $ | 0.00 |
| State Sales Tax @ | $ | 0.00 |
| Deposit | ($ | ) |
| Deposit | ($ | ) |
| Amount Due | $ | 0.00 |

Terms:  PAID AT THE DOOR

Please Make Check Payable To:

CP APPRAISALS
19W240 GOVERNORS TRL
OAK BROOK, IL 60523

Fed. I.D. #:

# EXHIBIT 6

### WEST SUBURBAN NEUROSURGICAL ASSOCIATES, S.C.

ROBERT P. KAZAN, M.D., F.A.C.S.
ANTHONY DIGIANFILIPPO, M.D., F.A.C.S.
STANLEY W. FRONCZAK, M.D., J.D., F.A.C.S.
LORI MORELAND, ADMINISTRATOR

20 E. OGDEN AVENUE • HINSDALE, ILLINOIS 60521
(630) 655-1229 • FAX (630) 655-0185

RECEIVED
SEP 1 0 2007
BY:------------------

A151U7

September 7, 2007

Steven Malkin, MD
1515 West Dundee Road
Arlington Heights, Illinois 60004



Re:  Jesus Rivera
      DOB:  3-6-75

Dear Dr. Malkin:

Mr. Jesus Riera, a 32 year old male, was seen in the office today, 9-7-07.  His main complaints are back problems, mainly back pain and pain down both legs,  the left more than the right.  He states this has been present for 3 years.  He has problems where his back will just give out every 3-6 months, and he would be off work for a few weeks. He is not working at this time because of the problem.  He has had various treatments including in January 2007 a procedure at Northwest Community Hospital.  He does have a film, which shows a needle in the L4-5 disc space.  I am not sure if this was percutaneous diskectomy or nucleoplasty or what at this point.  However, he stated he had some relief but it did not last.

Past Medical History:  Hypertension.

Medication: Diclofenac; Quinapril; Vicodin.

Allergy:  He denies allergies.

Social History:  He is 5'9" tall and weighs 220 lbs.  He is married.  He does not smoke.  He uses social alcohol.  He has two children in good health.

Review of Systems:  Itchy eyes with allergies.

Neurologically:  He is awake, alert, oriented x3.  Motor examination is 5/5 throughout. Sensory examination is intact to touch and pin prick.  Deep tendon reflexes are 1+.  There are no Babinski responses. Gait is intact.

Re: Jesus Rivera
September 7, 2007
Page 2.

Diagnostic Studies: I did review MRI scan with the patient. He has a report from 2 years ago. He had MRI in January and did have the films. He does have fairly large central disc herniation at L4-5 resulting in stenosis.    That was done prior to the needle procedure.

Impression: Lumbar radiculopathy with stenosis.

Recommendation: I discussed this at length with the patient. I think it is appropriate to consider surgery and he would like to consider that at this point. However, I would like to obtain a current MRI study and if it still reveals significant disc herniation,  then it certainly is appropriate to proceed with surgery. I discussed the procedure with him including laminectomy at L4-5.  He appears to understand the procedure, complications and risks including paralysis, weakness, bleeding, infection, pneumonia, DVT, incomplete or no relief, potential for recurrence, scarring or worsening pain.

I asked him to obtain a current MRI study and if  indeed appropriate, consider proceeding with surgery.

Sincerely yours,


Anthony DiGianfilippo, M.D.,  FACS




ADG:jmm
Dictated/not read.

## PROGRESS NOTES

**Name** RIVERA, JESUS     No.

| Date | Note progress of case, complications, change in diagnosis, condition on discharge, instructions to patient |
|---|---|

8-7-7   wt 225#   Ht 69"   B/P 148/102   P 84   T 98.1

New pt to establish

32 y/o ♂ c̄ c̄ of back pain. Pt has herniated disc in lumbar. Sx x 3 days years.
Pt has used steriod injections c̄ moderate relief.

32 y/o pt Hx lumbar disc problem L4-5, who presents c̄ back pain + numb. He has had 3 shots a year for last 3 yrs. No known etiology. Had MVA 7 yrs ago, but that is all healed. BP was high at last MD doesn't k #. was told to cut out salt.

PMHx: Lumbar Disc herniation
PSHx: None
A/I: NKDA
Meds: Flexeril 10mg
        Vicodin
        Relafen 750
Family: Father, labs RO's Healthy
        Mother ~56 Healthy
        Siblings healthy
Social: Not working x 2 yrs 2° pain. Married.
        Smoke 1pk /2-3 days x 1-2 yr. Quit 3 yrs ago
        EtOH 12 pk/wk
        Drugs None
        Wears seat belts.
ROS: See sheet
O: Appears stiff and uncomfortable moving
        Back flex 15° Side to side slightly ↓. No spinal
        tenderness. ⊕ paraspinal spasm.
        Ext ↓ dorsiflexion bilat. Reflexes 2+ Strength absent /
        BP ℞ 134/106   Ⓛ 138/110
A: ① Disc Herniation  ② HTN
P: ① Refer Physical therapy ② Ultram 20 mg/day ③ Prednisone 20 BID
        x 5 days → Diclofenac 75 BID ④ Norco 10 #50/mo
        ⑤ f/u p̄ seen by PT.

**PROGRESS NOTES**

A15167

Name: RIVERA, JESUS                                           No.

| Date | Note progress of case, complications, change in diagnosis, condition on discharge, instructions to patient |
|------|---|
| 9/4/07 | called pt 2x 4pm - 4:30 - line busy — P. Chesto eva |
| 9/5/07 | called pt — no answer — P. Chesto eva |
| 9/14/07 | called pt ⇒ no answer — P. Chesto eva |
| 9/17/07 | called pt — cannot get through no answer) trying to inform of referral P. Chesto eva |
| 9/20/07 | called Am & PM — no answer — P. Chesto eva |

THE MEDICAL CARE GROUP LTD.

Patient: RIVERA , JESUS

| # | DATE | MD INITIALS | PROBLEM |
|---|------|-------------|---------|
| | — | | Lumbar Disc Herniation |
| | ✓ | | HTN |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| HEALTH MAINTENANCE | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PHYSICAL EXAM | | | | | | | | |
| HEMOCCULT | | | | | | | | |
| MAMMOGRAM | | | | | | | | |
| PAP SMEAR | | | | | | | | |
| PSA | | | | | | | | |
| CHOLESTEROL | | | | | | | | |
| INFLUENZA | | | | | | | | |
| TETANUS | | PNEUMOVAX | | | RUBELLA | | | |

| ALLERGIES: (DRUG/REACTION) | |
|---|---|
| NKDA | |
| | |
| | |

THE MEDICAL CARE GROUP LTD.

## MEDICATION LIST

PATIENT: RIVERA, JESUS

| MEDICATION | START | STOP | REASON |
|---|---|---|---|
| Risperdal 20 q day | 8/07 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Pay to:**

**The Medical Care Group Ltd**
701 Lee Street Suite 480
Des Plaines, IL  60016
(847) 827-3008

**Patient Receipt**
*Friday, February 22, 2008*

| Amount Due | Today's Payment |
|---|---|
| **$0.00** | |

**Jesus Rivera**
2308 Algonquin Rd.
Unit 5
Rolling Meadows, IL  60008

| Date | Description | Check # | Fee | Units | Insurance | Patient |
|---|---|---|---|---|---|---|
| | **Jesus Rivera(7018763)/Steven Malkin MD/A064506** | | | | | |
| 02/22/2008 | Medical Records | | $4.30 | 1.0 | $0.00 | $4.30 |
| 02/22/2008 | Payment from Rivera, Jesus | | | | $0.00 | ($4.30) |
| | **Balance:** | | | | **$0.00** | **$0.00** |

**Thank you for your payment.**

| Total Balance | Ins. Balance | Pat. Balance |
|---|---|---|
| **$0.00** | **$0.00** | **$0.00** |

The Medical Care Group Ltd * 1515 W Dundee Rd * Arlington Heights, IL  60004 * (847) 590-1515